# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MCPHAIL; ROBERT BARR KIMNACH, III; SCOTT WAGNER; KRYSTIN WAGNER; CANDACE HURLEY; and NEIL HURLEY; on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST COMMAND FINANCIAL PLANNING, INC.; FIRST COMMAND FINANCIAL SERVICES, INC.; LAMAR C. SMITH; and HOWARD M. CRUMP,<br><br>Defendants. | CASE NO. 05cv179-IEG-JMA<br><br>**ORDER:**<br>**(1) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>**(2) AWARDING ATTORNEYS' FEES**<br><br>**(3) AWARDING COSTS TO CLASS REPRESENTATIVES**<br><br>**(4) GRANTING PLAINTIFFS' REQUEST TO ALLOW UNTIMELY CLAIMS AND OPT-OUTS**<br><br>**(5) AWARDING ADDITIONAL COSTS TO CLAIMS ADMINISTRATOR**<br><br>**(6) DIRECTING CLERK TO ENTER JUDGMENT** |

Presently, plaintiffs request the Court (1) grant final approval of class settlement, (2) award attorneys' fees and costs, and (3) award reimbursement of costs incurred by class representatives. In a supplemental memorandum, plaintiffs request the Court (4) allow 197 untimely claims and one untimely request for exclusion from the Class and (5) award additional costs to the Claims Administrator. Defendants filed two statements of non-opposition and five class members objected. After reviewing the parties' submissions, the class members' objections, and for the reasons set forth

below, the Court GRANTS plaintiffs' motions.

## BACKGROUND

The facts of this case are known to the Court and the parties and need not be repeated herein.

### I.     Procedural Background

On January 31, 2005, Michael McPhail, Robert Barr Kimnach III, and Leonardo Giovannelli filed a class-action complaint ("Initial Complaint") alleging defendants violated various federal securities laws. Kevin Morrison, Jennifer Morrison, Scott Wagner, Krystin Wagner, Candace Hurley, and Neil Hurley filed a separate lawsuit against defendants in the Western District of Kentucky, but voluntarily dismissed the case to join this action. (Doc. No. 29.) On June 9, 2005, the Court appointed these named plaintiffs as lead plaintiffs and approved their choice of lead counsel.[1]

Defendants moved to transfer the consolidated action to the Northern District of Texas, but the Court denied defendants' motion. On July 22, 2005, plaintiffs filed a Consolidated Amended Complaint ("CAC"), which defendants moved to dismiss.

On December 5, 2005, defendants withdrew their motion to dismiss to allow the parties to seek private mediation. (Doc. No. 83.) On January 17, 2006, the parties engaged in an unsuccessful mediation before the Hon. Daniel Weinstein (Ret.). The parties engaged in a second unsuccessful mediation before the Hon. Daniel Weinstein (Ret.) on February 23, 2006. (Decl. Blumenthal at ¶8.)

On February 27, 2006, defendants re-filed their motion to dismiss the CAC, which plaintiffs opposed. (Doc. No. 95, 99.) On April 10, 2006, the Court dismissed plaintiffs' 10b-5 and Investment Advisor Act claims without prejudice, denied defendants' motion to dismiss the section 12(a)(2) claim, and granted plaintiffs leave to amend their complaint. (Doc. No. 108.)

On May 1, 2006, plaintiffs filed their Consolidated Second Amended Complaint ("SAC"), which defendants moved to dismiss. The Court dismissed plaintiffs' section 12(a)(2) claim with prejudice and denied defendants' motion to dismiss plaintiffs' amended 10b-5 claim. (Doc. No. 121.) On August 10, 2006, defendants answered the SAC. (Doc. No. 122.)

On July 30, 2007, the Court granted, in part, plaintiffs' motion for class certification. (Doc. No. 175.) The Court's Order appointed plaintiffs as Class Representatives, granted plaintiffs leave

---

[1] Leonardo Giovannelli, Kevin Morrison, and Jennifer Morrison are no longer lead plaintiffs.

to amend the complaint, and certified a class consisting of:

> All persons who, during the period from January 31, 2000 through December 31, 2004, made a SIP payment so as to be charged a 50% sales charge on the money placed at that time into the SIP through Defendants and still owned the SIP on December 15, 2004, and who did not terminate within forty-five (45) days of purchasing the SIP so as to receive a full refund of the sales charge.

(Doc. No. 175.) On August 13, 2007, plaintiffs filed their Consolidated Third Amended Complaint ("TAC"), which defendants answered. (Doc. Nos. 176, 181.)

On September 19, 2007, the Court issued a formal Class Certification Order, permitting the action to proceed as a class action. (Doc. No. 184.) On January 3, 2008, the Court set the contents of the Class Notice. (Doc. No. 205.) Defendants moved for reconsideration and a stay of proceedings, which the Court denied. (Doc. No. 209.) On January 22, 2008, plaintiffs filed the final Class Notice, which allowed class members to opt out of the lawsuit before March 21, 2008.

After the Court certified the class, defendants petitioned the Ninth Circuit for permission to appeal. Ultimately, the Court of Appeals denied the petition. Defendants then petitioned the Supreme Court of the United States for a writ of certiorari, which plaintiffs opposed. The Supreme Court denied the petition on January 7, 2008. In addition, throughout the litigation, the parties engaged in extensive discovery disputes including issues involving interrogatories to absent class members, production of the class list, and production of electronic discovery. These disputes required meet and confers, conferences with Magistrate Judge Adler, and resolutions by formal motion.

On July 25, 2008, the parties completed all non-expert discovery. On August 5, 2008, the parties engaged in a third unsuccessful mediation before the Hon. Daniel Weinstein (Ret.). On August 27, 2008, the parties attended a settlement conference with Magistrate Judge Adler, which resulted in a proposal the parties accepted on August 29, 2008. The accepted proposal is the settlement now presented to this Court for final approval.

On November 10, 2008, the Court preliminarily approved the class settlement and ordered plaintiffs disseminate notice of the settlement to class members. On January 9, 2009, notice of settlement was mailed to the 207,412 investors who comprise the class. In additional, the court approved summary notice was published in <u>Military Times</u> on January 26, 2009. Class members submitted a total of 60,515 timely claims, a claims rate of 29.18%. Class members submitted 74

1  timely requests for exclusion from the class and five objections. In addition, class members submitted
2  197 untimely claims and 1 untimely request for exclusion.
3  On March 10, 2009, plaintiffs filed motions requesting final approval of the class settlement,
4  an award of attorneys' fees and costs, and a reimbursement of costs incurred by class representatives.
5  On March 20, 2009, plaintiffs filed a supplemental memorandum in support of their motions, detailing
6  the final claims information, the expenses of the claims administrator, and requesting inclusion of late
7  claims and late opt-out requests. Defendants filed two statements of non-opposition and five class
8  members filed objections. The Court conducted a fairness hearing on March 30, 2009.

**II.    The Proposed Settlement**

In consideration for settlement of this action and a release of claims, defendants paid $12,000,000 (Gross Settlement Fund) into an interest-bearing account with the Escrow Agent within 15 days after the Court preliminarily approved the settlement. Prior to distribution to class members, the Gross Settlement Fund will be used to pay: (i) Class Notices, Settlement Notice, Summary Notice, and claims administration costs, (ii) attorneys' fees and expenses, (iii) any service award to Class Representatives for their reasonable costs and expenses directly relating to class representation, and (iv) reasonable costs and expenses associated with determining each Authorized Claimant's share. (Settlement Agreement, ¶7.)

The balance of the Gross Settlement Fund will be the "Net Settlement Fund." (Settlement Agreement, ¶7.) Following the effective date, the Claim Administrator will distribute the Net Settlement Fund in accordance with the Plan of Allocation. (Settlement Agreement, ¶7.)

The claim administrator will allocate a pro rata share of the Net Settlement Fund to each authorized claimant based on their recognized claim compared to the total recognized claims of all Authorized Claimants. The claim administrator will compute this share by dividing the amount each Authorized Claimant paid for their 50% SIP sales charge during the Class Period by the total amount paid by all Authorized Claimants, then multiplying this quotient by the Net Settlement Fund. (Decl. Blumenthal, ¶18). This is a claims-made settlement with no reversion of funds to defendants. Defendants will not have any involvement in or liability for reviewing, approving, or challenging claims filed with the Claims Administrator in connection with this Settlement. (Settlement Agreement,

1  ¶12.) The Claims Administrator will process the Proofs of Claim and, after the entry of the Class
2  Distribution Order, will distribute the Net Settlement Fund to Authorized Claimants as ordered by the
3  Court. (Settlement Agreement, ¶16.)
4      The parties agree Class Counsel will request attorneys' fees and reimbursement of expenses
5  payable from the Gross Settlement Fund in an amount equal to 30% of the first $10 million and 25%
6  of the remaining $2 million. (Decl. Blumenthal, ¶19.)  Amounts the Court approves will be payable
7  to Class Counsel from the Gross Settlement Fund and the escrow agent will release the amount within
8  15 days after the Court signs the Judgment. (Settlement Agreement, ¶10(a).) The parties also agree
9  the Class Representatives may apply for reimbursement of reasonable costs and expenses, including
10 lost wages, directly relating to the representation of the Class as allowed by 15 U.S.C. § 78u-4(a)(4).

**DISCUSSION**

**A.    The Settlement**

Federal Rule of Civil Procedure 23(e)(1) requires the Court to determine whether a settlement is "fair, reasonable, and adequate."  To make this determination, the Court considers various factors:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel . . . and [7] the reaction of the class members to the proposed settlement

Stanton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (quoting Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003)).  In addition, the settlement must not be the product of collusion among the parties.  In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000).

*1.    The Strength of the Plaintiffs' Case*

Plaintiffs foresaw three specific weaknesses in their case.  First, defendants planned to assert numerous factual defenses at trial: (1) a denial of any misrepresentations; (2) a showing that the commission charges worked to the advantage of class members; and (3) an attack on plaintiffs' claimed reliance on the alleged misrepresentations.  Plaintiffs believed these defenses posed a serious threat to the class's claims.  Second, plaintiffs worried the Ninth Circuit may reverse certification because of a potentially improper application of the presumption of reliance to a securities case. Binder v. Gillespie, 184 F.3d 1059, 1063-64 (9th Cir. 1999) (affirming decertification of a securities

10b-5 class action after determining the presumption of reliance was inapplicable); In re Initial Pub. Offering Secs. Litig., 471 3d 24, 42-43 (2d Cir. 2006) (same); see also Gariety v. Grant Thornton, LLP, 368 F.3d 356, 367 (4th Cir. 2004). Finally, plaintiffs worried defendants would declare bankruptcy if plaintiffs recovered the full $175 million judgment. Given these weaknesses, the strength of the plaintiffs' case supports final approval of class settlement.

2. *The Risk, Expense, Complexity, and Likely Duration of Further Litigation and the Risk of Maintaining Class Action Status Throughout Trial*

The potential complexity and possible duration of trial also weigh in favor of granting final approval. "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of settlement." In re Mego, 213 F.3d at 458. Plaintiffs acknowledge the difficulties of proving damages, recognize the uncertainty of outcome, and believe defendants would appeal in the event of adverse judgment. A post-judgment appeal would require many years to resolve and delay payment to class members. Plaintiffs believe the benefits of a guaranteed recovery today outweigh an uncertain future result.

Further, the settlement is reasonable given the risks associated with potential recovery. First, defendants have available assets of only $30 million to $60 million, which inherently limits the total funds available to satisfy a judgment. (Doc. No. 250-2.) Given these reduced assets, the settlement is approximately 20-40% of the maximum recoverable judgment. Additionally, a $175 million judgment would force defendants into bankruptcy; further delaying and limiting plaintiffs recovery. Finally, Class Counsel rated the risk of prevailing in this litigation at no less than 50%. Combining these factors, Class Counsel reasoned $12 million today is worth more than a 50% chance of recovering $30 million or less after three to five years of appeals or bankruptcy proceedings. Accordingly, plaintiffs argue, and the Court agrees, the actual recovery confers substantial benefits on the class that outweigh the potential recovery through full adjudication.

3. *The Amount Offered in Settlement*

The amount offered in settlement supports final approval of the settlement. In their second amended complaint, plaintiffs asked for $175 million in damages; however, they now propose settling for $12 million. Despite the large discrepancy, the amount offered is reasonable considering the previously discussed risks associated with litigation, similar settlements in the Ninth Circuit, and

defendants' settlement with the SEC in a different, but related, case.

The settlement amount falls within the range of similar settlements in the Ninth Circuit. In <u>In re Mego Financial Corp.</u>, the Ninth Circuit found a settlement fair and adequate when the plaintiff recovered $2 million out of a claimed $12 million, or 16.66%. 213 F.3d at 459. The Northern District of California has noted, "For securities class action settlements below $50 million, median settlements as a percentage of estimated damages were 10.5% through year end 2005 and 8.8% in 2006." <u>In re Portal Software Secs. Litig.</u>, 2007 U.S. Dist. LEXIS 88886 at * 10 (citing Laura E. Simmons & Ellen M. Ryan, <u>Securities Class Action Settlements: 2006 Review and Analysis</u> 5 (Cornerstone 2007)). Here, although the recovery is only approximately 7% of the estimated damages, it is 20-40% of the estimated recoverable judgment; weighing in favor of final approval.

Additionally, the settlement compares favorably to an $12 million SEC settlement with defendants for closed account holders, a fact that weighs in favor of final approval.[2]

*4.  The Extent of Discovery Completed and the Stage of the Proceedings*

The extent discovery is completed and the stage of the proceedings weigh in favor of final approval if "the parties have sufficient information to make an informed decision about settlement." <u>Linney v. Cellular Alaska Partnership</u>, 151 F.3d 1234, 1239 (9th Cir. 1998).

The settlement is the result of extensive litigation and negotiation. The parties litigated the case for over four years, engaged in four unsuccessful mediations, conducted extensive discovery, petitioned the Ninth Circuit for interlocutory review, and petitioned the Supreme Court for writ of certiorari. During discovery, the parties took dozens of depositions, reviewed thousands of pages of documents, and completed expert reports. The Court has certified the class and appointed Class Counsel. At the time of settlement, the parties were finishing expert discovery and Class Counsel was preparing for trial. Given this history, Class Counsel possessed sufficient information to make an informed decision at the time of settlement, which weighs in favor of granting final approval.

*6.  Experience and Views of Counsel*

Class counsel has extensive experience in class action matters. Class Counsel has litigated

---

[2] The SEC settlement applied only to investors who had terminated their First Command SIP as of December 15, 2004. The SEC settlement provided no relief to members of the class in this case who, by definition, still owned their SIP as of December 15, 2004.

numerous types of nationwide actions, including securities shareholder litigation, labor and overtime litigation, constitutional challenges to state and local statutes, collateral protection insurance cases, consumer refund actions, and tobacco litigation. Given this experience, Class Counsel's belief that the settlement is fair and adequate weighs in favor of final approval.

7.  *Reaction of the Class Members*

After dissemination of the class notice to the 207,412 members of the class, which provided each class member with the terms of settlement, only five class members objected and only fifty-six class members filed timely opt-outs. Importantly, a review of the objections reveals that four of the "objections" are, in fact, assertions that defendants never deceived investors and should not be liable. These four objections are better characterized as opt-outs. The fifth objection was submitted by Captain William Smith and his wife, Yun H. Kim-Smith, who request a full recovery of the sales commissions they paid.[3] While the Smith's frustration is understandable, given the litigation risks and defendants' available assets, the objection is overruled.

The presence of a small minority of objectors strongly supports a finding that the settlement is fair, reasonable, and adequate. See In re Austrian & German Bank Holocaust Litigation, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-119 (3d Cir. 1990)(finding 29 objections out of a 281 member class "strongly favors settlement"). In the present case, only .0024% of noticed class members filed objections, none of which raised substantive problems or deficiencies with the settlement.

Importantly, every class member had the opportunity to participate in the settlement under the same terms. Class members timely submitted 60,515 claims out of the 207,412 potential claims, representing 29.18% of the entire class. This rate is roughly equal to the claims rate experienced in the SEC settlement. This class member reaction weighs in favor of granting final approval.

8.  *Collusion Between the Parties*

The collusion inquiry addresses the possibility the agreement is the result of either overt

---

[3] The Smiths did not file their objection to the settlement with the Court, but it has been submitted as Exhibit 3 to the Norman Blumenthal Declaration. (Doc. No. 265-3.)

misconduct by the negotiators or improper incentives for certain class members at the expense of other members of the class. <u>Stanton</u>, 327 F.3d at 960. Because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action. <u>Id.</u> The two aspects of the settlement susceptible to self-interested misconduct are the potential awards to Class Representatives and attorneys' fees.

First, the procedure for Class Representative reimbursement does not appear to be the result of collusion. Under the settlement agreement, Class Representatives must apply directly to the Court for reimbursement of expenses and time directly related to their representation of the class. Congress authorized this reimbursement under 15 U.S.C. § 78u-4(a)(4), which allows the Court to award "reasonable costs and expenses (including lost wages) directly relating tot he representation of the class to any representative party serving on behalf of a class." Because the Class Representatives must submit their expenses directly to the Court, the possibility for collusion is eliminated.

Second, the attorneys' fees also do not appear to be the result of collusion. Plaintiffs may simultaneously negotiate the merits and attorneys' fees. <u>Stanton</u>, 327 F.3d at 971. The Ninth Circuit has established a 25% "benchmark" for common fund cases. <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1376 (9th Cir. 1993). The "benchmark percentage should be adjusted . . . when special circumstances indicate that the percentage recovery would be either to small or too large in light of the hours devoted to the case or other relevant factors." <u>Id.</u> (citation omitted). In this case, the parties agreed Class Counsel could request 30% of the first $10 million of the Settlement amount and 25% of the additional $2 million. Here, as previously noted, Class Counsel devoted four years to this case, conducted numerous depositions, engaged in extensive mediation attempts, and briefed an opposition to a petition to the Supreme Court for writ of certiorari. Given these factors, a departure from the 25% benchmark appears to be a result of good faith negotiation and free from collusion.

All of the factors weigh in favor of approving the settlement, therefore, the Court **GRANTS** final approval of the settlement

**II.    Attorneys' Fees & Costs**

The parties agreed Class Counsel could request attorneys' fees equal to 30% of the first $10 million of the Settlement amount and 25% of the additional $2 million. Parties to a class action may

1  negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. See Evans
2  v. Jeff D., 475 U.S. 717, 734-35, (1980).  The Ninth Circuit has established a 25% "benchmark" for
3  common fund cases.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).  The
4  "benchmark percentage should be adjusted . . . when special circumstances indicate that the
5  percentage recovery would be either to small or too large in light of the hours devoted to the case or
6  other relevant factors."  Id. (citation omitted).

7      The Court evaluates five factors to determine if the award is reasonable: (1) the results
8  achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent
9  nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar
10 cases.  In re Omnivision Technologies, Inc., 2007 WL 4293467 at *9 (N.D. Cal., Dec. 6, 2007).  The
11 Court turns to each of these factors in turn.

12     All of the factors weigh in favor of approving the requested fee.  First, the result achieved, a
13 7% recovery of the estimated damages, falls within the range of typical recoveries in complex
14 securities class actions.  See In re Cendant Corp. Litig., 364 F.3d 201, 231 (3d Cir. 2001) (noting that
15 typical recoveries in complex securities class actions range from 1.6% to 14% of estimated damages).
16 Second, as detailed above, the risks of litigation were real and substantial.  Third, the complexity and
17 duration of the case, coupled with the intensity of the negotiations, militates in favor of approval.
18 Fourth, Class Counsel took this case under a contingent fee basis, advanced all costs in the litigation,
19 and had to forego other financial opportunities.

20     The fifth factor – awards made in similar cases – also militates towards approving the proposed
21 fees.  In similar cases, both the Ninth Circuit and its associated district courts have approved fees of
22 nearly 30% of the fund.  See, e.g.,  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir.
23 2000) (affirming award of attorneys' fees equal to 33 1/3 % of the fund); In re Immune Response Secs.
24 Litig., 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007) (awarding attorneys' fees equal to 25% of the
25 settlement fund); Omnivision, 559 F.Supp.2d at 1046-7 (awarding attorneys' fees equal to 28% of the
26 settlement); In re Activision Sec. Litig., 723 F. Supp. 1373 (N.D. Cal. 1989) (awarding fees equivalent
27 to 32.8% of the settlement fund).  The proposed fee is within the range established in similar cases,
28 therefore, all of the factors weigh in favor of granting the requested attorneys' fees.

Further, the proposed attorneys' fee award is less than Class Counsel's lodestar calculation, buttressing the Court's finding of reasonableness. "[C]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050-51 (9th Cir. 2002). In the instant case, Class Counsel expended more than 11,592 hours prosecuting this action on behalf of the class. These hours, when multiplied by Class Counsel's customary hourly rates, corresponds to a total lodestar amount of more than $4.8 million. See (Blumenthal Decl. at ¶ 13; Schulz Decl. at ¶7; Rouco Decl. at ¶7; White Decl. at ¶4; Brewer Decl. at ¶7.) The requested fee award is only $2,684,149.83, supporting the Court's reasonableness determination.

Regarding litigation expenses, the parties agreed that Class Counsel could recover reasonable litigation costs as part of the 30% of the first $10 million and 25% of the remaining $2 million. "Attorneys may recover their reasonable expenses that would be typically be billed to paying clients in non contingency matters." Omnivision, 559 F. Supp. at 104. In the instant case, Class Counsel requests reimbursement for $815,850.17 of costs and expenses. After review of Class Counsel's declarations and the proffered firm billing records, the Court concludes the costs were reasonably incurred and adequately documented.

### III.    Reimbursement of Costs Incurred by Class Representatives

Plaintiffs move for the reimbursement of the class representatives' reasonable costs and expenses relating to the representation of the class, pursuant to 15 U.S.C. § 78u-4(a)(4). Specifically, plaintiffs seek (1) an award of $10,422.30 for Michael McPhail; (2) an award of $9,380.96 for Robert Kimnach; (3) $3,867.72 for Candace Hurley; (4) an award of $923.20 for Neil Hurley; (5) an award of $3,149.96 for Scott Wagner; and (6) an award of $2,073.00 for Krystin Wagner.

Title 15, Section 78u-4(a)(4) of the United States Code allows class representatives to be reimbursed for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Plaintiffs attached declarations to their motion for attorneys' fees, which detail the costs and expenses incurred by class representatives that directly related to their representation of the class. Further, the requested reimbursement is consistent with payments in similar securities cases under the Private Securities

1  Litigation Reform Act (PLSRA).  See, e.g., In re Immune Response Secs. Litig., 497 F. Supp. 2d at
2  1173-74 (approving a reimbursement to the class representative of $40,000); In re Xcel Energy Inc.,
3  Sec., Derivative, and ERISA Lit., 364 F. Supp. 2d 980 (D. Minn. 2005) (awarding $100,000
4  collectively to a group of lead plaintiffs); Un re Dunn & Bradstreet Credit Servs. Customer Litig., 130
5  F.R.D. 366 (S.D. Ohio 1990)(awarding $55,000 each to two class representatives).  In the instant case,
6  because the class representatives documented the reasonable expenses which fall within the range of
7  awards granted in similar cases, the Court GRANTS plaintiffs' motion.

8  **IV.    Untimely Filed Claims and Opt Outs**

9  In their supplemental memorandum, filed on March 20, 2009, plaintiffs request the Court allow
10 197 untimely claims and one untimely request for exclusion from the Class.  Before the distribution
11 of a settlement, a district court has discretion to grant untimely claims under Rule 23.  In re Gypsum
12 Antitrust Cases, 565 F.2d 1123, 1128 (9th Cir. 1977); Zients v. LaMorte, 459 F.2d 628, 630 (2d Cir.
13 1972) ("Until the fund created by the settlement is actually distributed, the court retains its traditional
14 equity powers. . . . to protect unnamed, but interested persons.").  The Court will exercise this
15 discretion if there is a showing of good and sufficient cause to excuse the tardiness of the claims.
16 Plaintiffs argue the claims were untimely because the members of the Class are primarily military
17 personnel who do not always have the opportunity to complete these forms.  In one specific instance,
18 plaintiffs received a call from a class member who submitted a late claim because he was serving in
19 Iraq, thus he was unable to submit his claim until his return.  Plaintiffs have proffered good and
20 sufficient cause to excuse the tardiness of the filings; therefore, the Court GRANTS plaintiffs' request
21 to allow the 197 untimely claims and one untimely request for exclusion.

22 **V.     Administrative Costs**

23 The stipulation of settlement requires additional court approval for any award costs and
24 expenses to the claim administrator in excess of $600,000.  The claims administrator, Gilardi,
25 estimates a total cost of $754,001.67, which is $154,001.67 above the initial allocation.  In support
26 of the requested additional costs, Gilardi has submitted a billing summary of the services performed
27 for these expenses.  (Solorzano Decl., Ex. E., Doc. No. 268.).  Good cause appearing, the Court
28 approves the payment of $754,001.67 to the claims administrator.

**CONCLUSION**

For the foregoing reasons, the Court (1) GRANTS plaintiffs' motion for final approval of class settlement; (2) GRANTS plaintiffs' motion for award of attorneys' fees and costs; (3) GRANTS plaintiffs' motion for award of costs to class representatives; (4) GRANTS plaintiffs request to allow the 197 untimely claims and one untimely request for exclusion; (5) GRANTS plaintiffs' motion for award of costs to the claims administrator; and (6) ORDERS the Clerk to enter judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The Court adopts plaintiffs' proposed orders, which will be entered separately on the docket.

**IT IS SO ORDERED.**

DATED: March 30, 2009

_Irma E. Gonzalez_
IRMA E. GONZALEZ, Chief Judge
United States District Court